UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MATTHEW S. RICHARDSON,

    Plaintiff,

v.

NANCY MARTHAKIS *et al.*,

    Defendants.

CAUSE NO. 3:20-CV-240-DRL-MGG

OPINION and ORDER

Matthew S. Richardson, a prisoner without a lawyer, initiated this case by filing a complaint and a motion for a preliminary injunction. "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis original). To obtain a preliminary injunction, the moving party must show: (1) he will suffer irreparable harm before the final resolution of his claims; (2) available remedies at law are inadequate; and (3) he has a likelihood of success on the merits. *See BBL, Inc. v. City of Angola*, 809 F.3d 317, 323–24 (7th Cir. 2015).

An injunction ordering the defendant to take an affirmative act rather than merely refrain from specific conduct is "cautiously viewed and sparingly issued." *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997) (quotation marks and citation omitted). It is true that every inmate is entitled to receive constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). However, before an inmate can obtain injunctive relief, he must make a clear showing that the medical care he is receiving violates the Eighth Amendment prohibition on cruel and unusual punishment. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012).

Mr. Richardson, who is currently housed at the Indiana State Prison, alleges that he is being denied constitutionally adequate medical care for an injury he suffered to his right ring finger on July

26, 2019. He has sued two physicians, a correctional officer, and Wexford of Indiana for monetary damages and injunctive relief. In his motion for a preliminary injunction, he asks to be "promptly evaluated by, accurately diagnosed and, if medically necessary, treated by an Orthopedic Specialist." ECF 4 at 1. He alleges that he will suffer irreparable harm to his finger "if it's not already too far gone now" and that he continues to experience pain due to his swollen and "permanently bent" finger. *Id.*

Mr. Richardson has attached numerous medical records to his complaint. These records show that he has been consistently seen and treated by the medical staff at the prison since he initially sought medical care on August 5, 2019. For example, an x-ray was immediately ordered, which "fail[ed] to demonstrate fracture or dislocation," so his finger was splinted and ice/cool compresses were given. ECF 1-1 at 15–19. During two separate visits to the nurse in August, he complained of continued pain, so he was given Naprosyn for the pain and inflammation and later acetaminophen. *Id.* at 20–23. Another x-ray was performed on August 28, which again showed "no acute fracture or dislocation." *Id.* at 24. In September, in response to complaints that he could not fully extend his finger, he was given an alternative treatment plan by Dr. Marthakis, which included an extension splint being applied and re-applied by the nursing staff eight times throughout the month to help straighten it. *Id.* at 25–34. On September 24, 2019, he was seen by Sam M. Fuller, M.D., an outside orthopedic specialist who noted that Richardson described his pain as "mild, achy, and intermittent." *Id.* at 35. Dr. Fuller observed "flexion contracture approx 35 degrees at PIP"[1] and swelling at the joint but no infection. *Id.* at 36. Dr. Fuller noted, "I do not recommend any surgical intervention. He will buddy tape the finger during activity and follow up as needed." *Id.* On October 10, 2019, Mr. Richardson was a no show for finger re-taping by the nurse. *Id.* at 37. On December 6, 2019, he presented to the nurse with

---

[1] "Proximal interphalangeal (PIP) flexion contracture is a common complication following hand injuries and conditions." *See* https://www.ncbi.nlm.nih.gov/pubmed/8994014 (last visited Mar. 19, 2020). "Once finger extension is lost, options include nonsurgical or surgical treatment. Nonsurgical treatment such as splinting or serial casting should be tried before attempting surgical intervention." *See* https://www.ncbi.nlm.nih.gov/pubmed/16959890 (last visited on Mar. 19, 2020).

complaints that he still could not move his finger and was experiencing pain. *Id.* at 40–41. The nurse scheduled a follow-up appointment with a physician and noted that Mr. Richardson had stated he had "plenty of pain medication and is taking his pain meds, does not need any more pain medication now." *Id.* A week later, he presented for a provider visit and requested an MRI and surgery for his finger. Notes indicate that he "is not wearing his buddy taping to his hand with the injured finger" and that he had denied any new injury. *Id.* at 43. On January 3, 2020, Mr. Richardson was seen by the nurse for complaints of "discomfort and pain with no improvements," and he was again educated on the use of bandages to immobilize the injury. *Id.* at 44-45.

Mr. Richardson may disagree with the treatment he has received thus far for his finger injury, but mere disagreement with medical professionals about the appropriate course of treatment does not establish deliberate indifference, nor does negligence or even medical malpractice. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). In fact, "medical professionals are not required to provide 'proper' medical treatment to prisoners, but rather they must provide medical treatment that reflects 'professional judgment, practice, or standards.'" *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (citation omitted); *see also Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("[T]he Constitution is not a medical code that mandates specific medical treatment.").

Here, as noted above, the documents attached to Mr. Richardson's complaint show that he has been consistently seen and treated since he first presented to medial with finger issues in August 2019, including x-rays, splinting/bandaging, and pain and inflammation reducing medication.[2] He was evaluated by an outside orthopedic specialist who advised against surgery and instead recommended buddy taping his finger during activity. Even if Dr. Fuller told Mr. Richardson something different

---

[2] Although the last medical document submitted is from January of 2020, Mr. Richardson does not allege, nor is it reasonable to infer, that he has not been seen or treated since then. Furthermore, he does not dispute the treatment notes from December reflecting that he told the nursing staff he had "plenty of pain medication and is taking his pain meds."

3

during the appointment, which is what Mr. Richardson alleges, the prison medical staff can hardly be faulted for carrying out the directives written in Dr. Fuller's notes or for the fact that Mr. Richardson appears to have been non-compliant in his recommended treatment plan for buddy taping on at least two occasions.[3]

Dr. Fuller recommended a follow up visit as needed. Yet, based on this record, there is no indication that any such visit—if warranted at all—is urgently needed. Although Mr. Richardson alleges that he remains in pain and that he cannot straighten his swollen finger, he does not allege that his condition has worsened since his visit with Dr. Fuller. *See e.g. Snipes*, 95 F.3d at 592 (suggesting that the total alleviation of pain is not constitutionally required and noting that, "[t]o say the Eighth Amendment requires prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment would be absurd"). Moreover, Mr. Richardson has not plausibly alleged that, in the absence of immediate injunctive relief, he will suffer further irreparable harm to his finger. In fact, in grievances attached to the complaint, Mr. Richardson states that Dr. Fuller told him the injury had "already healed wrong" (ECF 1-1 at 4–5), seeming to suggest that the harm has already been incurred. And, although he indicates that Dr. Fuller told him "surgery could give [him] some more movement in [his] finger," it is not reasonable to infer either that surgery is the only constitutionally adequate treatment option or that any such surgery—if warranted—would need to be performed prior to the resolution of this lawsuit to avoid additional harm.

Thus, in light of the foregoing, Mr. Richardson has not demonstrated that he has a reasonable likelihood of success on the merits or sustained his burden of demonstrating that he will suffer irreparable harm if a preliminary injunction does not issue. Put simply, Mr. Richardson has not shown

---

[3] Even assuming Mr. Richardson's allegation that Wexford has a policy of discouraging costly diagnostic tests and procedures is true and that Dr. Fuller could not perform those tests or procedures absent Wexford's approval, it is not reasonable to infer that Dr. Fuller, an outside specialist, would alter his written recommendations regarding any possible urgent treatment needs.

4

that a preliminary injunction is proper at this time. *See BBL, Inc.*, 809 F.3d at 323–24. For these reasons, the motion for a preliminary injunction (ECF 4) is DENIED.

SO ORDERED.

March 23, 2020 *s/ Damon R. Leichty*
Judge, United States District Court