UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MATTHEW S. RICHARDSON,

   Plaintiff,

   v.                                              CAUSE NO. 3:20-CV-240-DRL-MGG

NANCY MARTHAKIS, et al.,

   Defendants.

OPINION AND ORDER

Matthew Richardson, a prisoner proceeding without a lawyer, filed a complaint under 42 U.S.C. § 1983. Under 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against an immune defendant. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must give a *pro se* complaint liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Mr. Richardson is incarcerated at Indiana State Prison (ISP). He alleges that medical staff failed to provide adequate care for an injury he suffered to his finger in July

2019. He sues two physicians, a correctional officer, and Wexford of Indiana, LLC, seeking monetary damages and injunctive relief.[1]

According to the complaint and attachments, Mr. Richardson was attacked by another inmate in July 2019. In the process, he fell on his right hand and injured his finger. He claims the finger looked "bent" and "dislocated" after the fall. Initially he did not tell any prison staff about what had happened because he feared retaliation from the inmate who had attacked him. A few days after this incident, however, word reached Sergeant Bradley Stacks, a former correctional officer who no longer works at ISP, about what happened. Mr. Richardson claims Sergeant Stacks told him to say he fell down at work because the sergeant did not want to have to put the unit on lockdown, which was apparently protocol after an inmate attack.

Approximately five days after this incident, Mr. Richardson walked down to the medical unit for treatment because his finger was still swollen, discolored, and causing him significant pain. He received an x-ray, which showed no obvious fracture. His finger was splinted. He returned to the medical unit about ten days later still in pain and was given pain medication. Another x-ray was ordered, which he underwent at the end of August 2019. He was seen by Dr. Nancy Marathakis, a physician at the prison, on September 4, 2019. He was told the finger was not broken. He said he felt an MRI was needed to see if there was tendon or other damage to the finger, which was still discolored

---

[1] This court previously denied Mr. Richardson's motion for a preliminary injunction seeking immediate evaluation and treatment by an outside orthopedic specialist, concluding that he had not established a likelihood of success on the merits or that he would suffer irreparable injury if such relief was not granted [ECF 5].

2

and bent. He was told that an MRI was not being approved by Dr. Michael Mitcheff, the regional medical director for Wexford at the time of these events, and that instead he should wear an "extension" splint on his finger for several weeks. He subsequently had his hand wrapped and splinted by medical staff on a daily basis until approximately September 23, 2019. He wrote several grievances during this period because he did not agree with Dr. Marthakis's treatment decision.

On September 24, 2019, he was taken to an outside orthopedic doctor for evaluation. He claims the doctor told him his finger should not have been splinted and that he should have been given physical therapy right away. He claims the doctor said a splint would limit his mobility and cause scar tissue to form around his tendons.[2] He further claims the doctor told him that, because of the treatment he had been given to date, surgery might actually make the problem worse. The doctor did not recommend surgery at that time, but allegedly told Mr. Richardson that if his symptoms persisted that option could be discussed. He claims the doctor told him to return for a follow-up visit, but that no such visit was ever scheduled.

He claims that he tried to see Dr. Marthakis again at the end of September 2019, but she would not see him and instead sent a note stating that he should continue wearing his splint. He believes this was improper because the orthopedist told him he should not be wearing a split. He continued to file grievances about his medical care throughout

---

[2] An attachment to the complaint reflects that the orthopedist recommended treating his finger with "buddy tape," but it is unclear whether this is different than splinting [ECF 1-1 at 36]. At this stage, the court must accept all of Mr. Richardson's allegations as true and construe all reasonable inferences in his favor.

3

October, November, and December 2019. He claims that the treatment he was provided did not address the pain and limited mobility in his finger, and instead caused him permanent damage.

Inmates are entitled to constitutionally adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim, a prisoner must allege (1) that he had an objectively seriously medical need and (2) that the defendant acted with deliberate indifference to that medical need. *Id.* A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious even a lay person would recognize the need for medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). On the second prong, inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. Courts generally "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 ( citation and internal quotation marks omitted).

At the same time, a prisoner is not required to show that he was "literally ignored" to establish deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). "[I]nexplicable delay in responding to an inmate's serious medical condition can reflect deliberate indifference," particularly when "that delay exacerbates an inmate's medical condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th

Cir. 2020) (citations and internal quotation marks omitted). Additionally, a "prison physician cannot simply continue with a course of treatment that he knows is ineffective in treating the inmate's condition." *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011). "[A] doctor's choice of the easier and less efficacious treatment for an objectively serious medical condition" can amount to deliberate indifference. *Berry*, 604 F.3d at 441.

Giving Mr. Richardson the inferences to which he is entitled at this stage, he has alleged a plausible Eighth Amendment claim against Dr. Marthakis. Although a mere disagreement with a prison doctor's treatment decisions does not establish an Eighth Amendment violation, Mr. Richardson alleges that Dr. Marthakis delayed for nearly two months in sending him for evaluation by an outside orthopedist, ordered a treatment that the orthopedist told him would only exacerbate his injury, and refused to see him for proper follow-up care. He further claims that the treatment he received for his finger was not effective in relieving his pain, limited mobility, and other symptoms. He has alleged enough to proceed past the pleading stage against Dr. Marthakis.

He also sues Dr. Mitcheff, claiming that he violated his Eighth Amendment rights by refusing to approve him for an MRI. He alleges that Dr. Mitcheff chose a low-cost treatment option that was not effective in alleviating his symptoms. This can amount to deliberate indifference. *See Berry*, 604 F.3d at 441. It is not entirely clear at this stage that the lack of an MRI exacerbated or prolonged his injury, but the complaint can be read to allege that the outside orthopedist was not able to obtain a complete picture of his finger problem because of the lack of an MRI. He will be permitted to proceed past the pleading stage against Dr. Mitcheff.

He also sues Wexford, the private company that employed medical staff at ISP at the time of these events.[3] A private company may be held liable for constitutional violations when it performs a state function. *See Hildreth v. Butler*, 960 F.3d 420, 422 (7th Cir. 2020). However, there is no general *respondeat superior* liability under 42 U.S.C. § 1983, and Wexford cannot be held liable solely because it employs the medical professionals involved in Mr. Richardson's care. *J.K.J. v. Polk Cty.*, 960 F.3d 367, 377 (7th Cir. 2020).

A private company performing a public function can also be held liable to the same extent as a government actor under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *See Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012). Under *Monell*, municipal entities or corporations performing a public function "cannot be held liable for the unconstitutional acts of their employees unless those acts were carried out pursuant to an official custom or policy." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (citations omitted). "The 'official policy' requirement for liability under § 1983 is to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Id.* (citations, internal quotation marks, and emphasis omitted). There is no "heightened" pleading standard applicable to *Monell* claims. *White v. City of Chicago*, 829 F.3d 837, 843 (7th Cir. 2016). Nevertheless, the "plausibility" standard set

---

[3] Wexford's contract with Indiana Department of Correction terminated on July 1, 2021 (after this complaint was filed), and it was replaced by Centurion Health. *See* Centurion Health Provides Correctional Health for Indiana Department of Correction, Cision PR Newswire, July 12, 2021, available at https://www.prnewswire.com/news-releases/centurion-health-provides-correctional-health-for-indiana-department-of-correction-301331594.html.

forth in *Twombly* and *Iqbal* applies equally to *Monell* claims. *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017); *McCauley v. City of Chicago*, 671 F.3d 611, 618 (7th Cir. 2011).

There is no factual content in the complaint from which it can be plausibly inferred that Wexford has an official policy or widespread practice of providing inadequate medical care to inmates with injuries like Mr. Richardson's. Nor is there any indication that it was an official policy or widespread practice that caused his injury. Rather, his complaint describes alleged failings by the individuals involved with his care, Dr. Marthakis and Dr. Mitcheff. This corporate defendant will be dismissed.

He also sues Sergeant Stacks for telling him to say he fell down at work and in failing to ensure that he received proper medical care. Liability under 42 U.S.C. § 1983 is based on personal responsibility, and Sergeant Stacks cannot be held liable for the misdeeds of other prison staff. *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). As a non-medical staff member, he was entitled to defer to medical providers regarding the proper course of treatment for Mr. Richardson's finger. *Id.* Nor is there any plausible basis to infer that Sergeant Stacks somehow prevented Mr. Richardson from obtaining necessary medical care. Instead, the complaint reflects that Mr. Richardson simply walked himself down to the medical unit when he decided he needed care. His dissatisfaction with the treatment he has been provided by prison medical staff is not a basis for holding Sergeant Stacks liable. *Id.* This defendant will be dismissed.

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Dr. Nancy Marthakis and Dr. Michael Mitcheff in their personal capacity for monetary damages for failing to provide

adequate medical treatment for his finger injury occurring in July 2019 in violation of the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES Sgt. Bradley Stacks and Wexford of Indiana, LLC;

(4) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Dr. Nancy Marthakis and Dr. Michael Mitcheff at Centurion Health, and to send them a copy of this order and the complaint pursuant to 28 U.S.C. § 1915(d);

(5) ORDERS Centurion Health to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent this information is available; and

(6) ORDERS Dr. Nancy Marthakis and Dr. Michael Mitcheff to respond, as provided in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

October 1, 2021  *s/ Damon R. Leichty*  
Judge, United States District Court