UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MATTHEW S. RICHARDSON, <br><br> Plaintiff, <br><br> v. <br><br> NANCY MARTHAKIS, et al., <br><br> Defendants. | CAUSE NO. 3:20-CV-240-MGG |

OPINION AND ORDER

Matthew S. Richardson, a prisoner without a lawyer, is proceeding in this case "against Dr. Nancy Marthakis and Dr. Michael Mitcheff in their personal capacity for monetary damages for failing to provide adequate medical treatment for his finger injury occurring in July 2019 in violation of the Eighth Amendment[.]" ECF 15 at 7-8. Dr. Marthakis and Dr. Mitcheff filed a motion for summary judgment. ECF 80. Mr. Richardson filed a response, and the defendants filed a reply. ECF 84, 86. The summary judgment motion is now fully briefed and ripe for ruling.

**I.      FACTS**

In July 2019, Mr. Richardson fell on his right hand and injured his right ring finger. ECF 1. On August 5, 2019, Mr. Richardson was seen by a nurse regarding his injured finger. ECF 81-1 at 49-52. The nurse noted his right ring finger was swollen. *Id.* at 51. The nurse contacted Dr. Marthakis who approved Mr. Richardson for an x-ray. *Id.* An x-ray was taken of Mr. Richardson's finger, which revealed no obvious fracture. *Id.*

at 52. The nurse splinted Mr. Richardson's ring and middle finger with an elastic bandage and provided him a cold compress to use as needed. *Id.*

On August 16, 2019, Mr. Richardson was seen by a nurse and requested re-evaluation of his finger. ECF 81-1 at 53-54. He reported ongoing pain and was given Naprosyn. *Id.* On August 26, 2019, Mr. Richardson was again seen by a nurse regarding his right ring finger. *Id.* at 56-57. The nurse examined Mr. Richardson's finger, but the medical records do not detail her findings. *Id.*

On August 28, 2019, Dr. Marthakis saw Mr. Richardson for a provider visit. ECF 81-1 at 59-63. She conducted a physical examination and discussed with Mr. Richardson that his previous x-rays did not show a dislocation or fracture but that she was suspicious of a tendon rupture. *Id.* Repeat x-rays were performed and Dr. Marthakis submitted an outpatient request for an MRI. *Id.* at 4, 58.

On September 6, 2019, Dr. Marthakis entered a chart update indicating that she discussed with Mr. Richardson an alternative treatment plan which included wearing an extension splint as applied by nursing staff. ECF 81-1 at 64. Dr. Marthakis also informed Mr. Richardson that his MRI had been deferred by her superiors. *Id.* On September 9, 2019, a nurse wrapped Mr. Richardson's ring finger with Kling wrap and tape. *Id.* at 66. Over the next several weeks, nurses regularly re-wrapped and re-taped his finger. *Id.* at 67, 69-74.

On September 16, 2019, Dr. Mitcheff reviewed Dr. Marthakis' outpatient request for Mr. Richardson to receive an MRI. ECF 81-1 at 226. Dr. Mitcheff submitted a request for additional information, including the results of an Elson test performed on Mr.

2

Richardson, Mr. Richardson's passive range of motion, and whether Mr. Richardson was in an extension splint for a central slip injury. *Id.* Dr. Mitcheff received the additional information he requested later that day. *Id.* After reviewing the information, he determined to approve Mr. Richardson for a referral to an orthopedic hand specialist rather than an MRI. *Id.*

On September 24, 2019, Mr. Richardson was seen off-site by orthopedic hand specialist Dr. Sam Fuller. ECF 81-1 at 78, 227-28. Dr. Fuller examined Mr. Richardson and noted muscle weakness, joint stiffness, and flexion contracture at approximately 35 degrees at PIP. *Id.* at 227-28. Mr. Richardson's Elson test was negative, indicating no injury to the central slip tendon. *Id.* at 228. Dr. Fuller recognized that Mr. Richardson's x-rays showed no fracture or dislocation. *Id.* He did not recommend any surgical intervention, and instead recommended buddy taping[1] the finger during activity with follow-up as needed. *Id.*

On September 27, 2019, Mr. Richardson submitted a request for health care form indicating that Dr. Fuller had recommended surgery for his finger and that he would like to proceed forward with the surgery. ECF 81-1 at 179. Medical staff responded that they would continue to splint his finger per discussion with Dr. Fuller. *Id.* On November 29, 2019, Mr. Richardson submitted another request for health care form,

---

[1] According to the National Institute of Health, buddy taping is a method for immobilizing finger injuries by bandaging a damaged finger together with a healthy one. *See* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3942599/ (last accessed October 27, 2022). The healthy digit acts as a splint, keeping the damaged one in a natural position for healing. *Id.*

3

again requesting surgery. *Id.* at 168. In response, Mr. Richardson was scheduled to see Dr. Marthakis. *Id.*

On December 13, 2019, Dr. Marthakis saw Mr. Richardson at a provider visit. ECF 81-1 at 89-90. He requested an MRI and surgery on his finger. *Id.* Dr. Marthakis noted Mr. Richardson was not wearing the buddy tape on his injured finger. *Id.*[2] She reviewed Dr. Fuller's notes, which indicated surgery was not recommended. *Id.* at 90. Dr. Marthakis ordered Tylenol and educated Mr. Richardson he needed to buddy tape his finger. *Id.* He was given supplies and told to request additional supplies through a healthcare request as needed. *Id.*[3]

On January 3, 2020, Mr. Richardson was seen by a nurse and reported continued discomfort in his right ring finger. ECF 81-1 at 96-98. The nurse immobilized Mr. Richardson's finger with an elastic bandage. *Id.* at 98.

Mr. Richardson's medical records indicate that, between January 3, 2020, and April 11, 2021, he did not seek any additional medical treatment for his finger. ECF 81-1 at 8.[4] On April 11, 2021, he submitted a healthcare request form seeking a follow up with Dr. Marthakis regarding his right ring finger. *Id.* at 167. He reported that the pain

---

[2] Mr. Richardson responds that he removed the buddy tape right before this appointment because he knew his finger would be re-wrapped by medical staff. ECF 84 at 9.

[3] It is unclear exactly when the medical staff began following Dr. Fuller's recommendation to buddy tape Mr. Richardson's finger, as the medical records appear to use the terms "splint" and "tape" interchangeably. But it is undisputed Mr. Richardson was instructed and provided materials to buddy tape his finger during the December 13, 2019, provider visit.

[4] Mr. Richardson purports to dispute this fact by arguing that he complained of pain during the January 3, 2020, nurse visit. ECF 84 at 10-11. But he does not allege or provide any evidence that he made any complaints or requested any treatment for his finger between January 3, 2020, and April 11, 2021.

4

was unbearable and that his medications were not helping, and requested that he receive additional x-rays. *Id.*

On April 29, 2021, Mr. Richardson was seen by a nurse regarding his complaints of finger pain. ECF 81-1 at 118-20. He reported that his pain was 10/10 on the pain scale and that Tylenol and Ibuprofen offered no relief. *Id.* at 120. He reported he had buddy taped his finger and attempted home exercises without success. *Id.* The nurse placed Mr. Richardson on the provider list. *Id.*

On May 6, 2021, Dr. Marthakis saw Mr. Richardson at a provider visit. ECF 81-1 at 122-23. He denied any new injury to his finger, and reported his finger had never been the same since his original injury. *Id.* Dr. Marthakis provided extra-strength Tylenol and ordered additional x-rays of Mr. Richardson's finger. *Id.* at 121, 123.

On May 27, 2021, Dr. Marthakis saw Mr. Richardson at a provider visit. ECF 81-1 at 127-32. She discussed the x-ray results with him, which showed mild flexion deformity with PIP joint swelling. *Id.* at 128. She offered him a home exercise program, submitted an outpatient request for physical therapy, demonstrated some physical therapy exercises he could do on his own, ordered lab work, and provided him prednisone. *Id.*

On June 16, 2021, Mr. Richardson was seen by a nurse and complained that non-surgical interventions for his finger were not successful and his finger was not moving as it should. ECF 81-1 at 136-38. The nurse noted that physical therapy had not yet been approved and instructed him to continue taking pain relievers and performing his home exercise program. *Id.*

5

On June 29, 2021, Mr. Richardson was seen by a nurse for lab work and pain in his right ring finger. *Id.* ECF 81-1 at 139-40. His lab work was normal and showed no indication of arthritis. *Id.*

On July 2, 2021, Dr. Marthakis saw Mr. Richardson at a provider visit. ECF 81-1 at 141-42. He reported difficulty with flexion and extension in his right ring finger. *Id.* Dr. Marthakis noted he had been approved for physical therapy and renewed his prescription for extra-strength Tylenol. *Id.*

On August 17, 2021, Dr. Marthakis saw Mr. Richardson at another provider visit. ECF 81-1 at 145-46. Mr. Richardson reported the Tylenol did not help and he had not yet been called out for physical therapy. *Id.* Dr. Marthakis informed him that she would email the physical therapist for recommendations. *Id.*

On September 2, 2021, Mr. Richardson was seen at a physical therapy appointment. ECF 81-1 at 147-48. The physical therapist noted Mr. Richardson's right ring finger had moderate swelling and decreased strength, range of motion, and function, and believed he may benefit from skilled therapeutic interventions and a home exercise routine. *Id.* Mr. Richardson was scheduled for follow-up physical therapy appointments on September 16 and September 30, but he did not appear for these appointments. *Id.* at 149, 151.[5]

---

[5] Mr. Richardson asserts he never refused any treatment and only missed these physical therapy appointments due to a mistake by prison staff. ECF 84 at 12. The court accepts that as undisputed.

On October 28, 2021, Mr. Richardson was seen at a physical therapy appointment. ECF 81-1 at 211. Mr. Richardson continued to demonstrate strength and range of motion impairments with no improvements from his initial evaluation. *Id.*

On November 9, 2021, Mr. Richardson was seen at a physical therapy appointment. ECF 81-1 at 209. The physical therapist indicated Mr. Richardson demonstrated no progress with regard to strength, range of motion, and pain reduction. *Id.* The physical therapist was suspicious of a tendon or ligament rupture and recommended further imaging or a follow-up appointment with the offsite orthopedic specialist. *Id.* Mr. Richardson was discharged from physical therapy at this time due to lack of progress. *Id.*

On December 28, 2021, Dr. Marthakis saw Mr. Richardson for a provider visit. ECF 81-1 at 203-06. She noted he continued to have ongoing complaints despite conservative treatment. *Id.* She submitted an outpatient request for a follow-up orthopedic appointment which was approved. *Id.* at 13, 203-06.

On February 10, 2022, Mr. Richardson saw orthopedic specialist Dr. Fuller for a follow-up appointment. ECF 81-1 at 192-94. Dr. Fuller indicated that Mr. Richardson had chronic flexion contracture but that no surgery or additional intervention could be provided. *Id.* at 13, 192, 194. He indicated Mr. Richardson did not need a follow-up appointment, and that he should be using his hand normally. *Id.* There is no evidence Mr. Richardson ever requested or received any additional medical treatment for his right ring finger after this appointment.

## II.     ANALYSIS

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To be held liable for deliberate indifference to an inmate's medical needs, a medical professional must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).

Furthermore, a prisoner is not entitled to demand specific care, nor is he entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). "Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). Where the defendants have provided some level of care for a prisoner's medical condition, in order to establish deliberate indifference the prisoner must show that "the defendants' responses to [his condition] were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). A mere disagreement with medical professionals about the appropriate treatment does not amount to an Eighth Amendment violation. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

*a. Dr. Marthakis*

Dr. Marthakis argues summary judgment is warranted in her favor because she provided Mr. Richardson with constitutionally adequate treatment for his right ring finger. ECF 81 at 13-17. Here, it is undisputed that Dr. Marthakis treated Mr. Richardson's right ring finger by examining his finger, performing x-rays, wrapping his finger, providing him a home exercise program, referring him to an orthopedic specialist, following the recommendation of the orthopedic specialist to buddy tape his finger, referring him to physical therapy, referring him back to the orthopedic specialist after physical therapy was unsuccessful, and prescribing him Naprosyn, prednisone, extra-strength Tylenol, and other pain medications. Thus, because it is undisputed Dr. Marthakis provided some level of care for Mr. Richardson's finger, Mr. Richardson can only survive summary judgment by showing the treatment provided by Dr. Marthakis was "plainly inappropriate." *See Hayes*, 546 F.3d at 524. Mr. Richardson raises several arguments in this regard.

First, Mr. Richardson argues Dr. Marthakis was deliberately indifferent for waiting fifty days to send him for an evaluation by an orthopedic specialist. ECF 84 at 15-16. However, it is undisputed Dr. Marthakis initially treated Mr. Richardson's finger by wrapping his finger, prescribing pain relief, and performing x-rays before determining to refer him to an orthopedic specialist. Mr. Richardson was not entitled to be sent immediately to an orthopedic specialist, and he provides no evidence that it was plainly inappropriate for Dr. Marthakis to evaluate his condition and attempt other treatment methods before making a referral.

Next, Mr. Richardson argues it was unreasonable for Dr. Marthakis to make him wait almost two years from his initial visit in August 2019 before referring him to physical therapy. ECF 84 at 2-4. However, an examination of the timeline of Mr. Richardson's medical treatment shows that Dr. Marthakis acted reasonably. Specifically, the undisputed facts show that: (1) between August 2019 and January 2020, Dr. Marthakis treated Mr. Richardson's finger by referring him to an orthopedic hand specialist and following the specialist's recommendation to buddy wrap his finger; (2) the specialist did not recommend that Mr. Richardson receive physical therapy at that time; (3) between January 2020 and April 2021, Mr. Richardson did not seek any treatment for his finger; and (4) in April 2021, once Mr. Richardson began again requesting treatment for his injured finger, Dr. Marthakis ordered additional x-rays and immediately referred Mr. Richardson to physical therapy once the results came back. Based on this timeline, no reasonable jury could conclude Dr. Marthakis was deliberately indifferent for delaying in referring Mr. Richardson to physical therapy.

Next, Mr. Richardson argues Dr. Marthakis was deliberately indifferent for splinting, rather than buddy taping, his injured finger, as he was informed by Dr. Fuller, his physical therapist, and a radiologist that his finger should not be splinted. ECF 84 at 3, 8-9, 15-16. But nowhere in Mr. Richardson's medical records does any medical professional indicate that his finger should not be splinted, and Mr. Richardson's assertion he was told this by medical professionals is inadmissible hearsay. Regardless, Mr. Richardson's medical records show that, during a provider visit on December 13, 2019, Dr. Marthakis educated Mr. Richardson on buddy taping

10

his finger and provided him with the materials to do so. There is no evidence Dr. Marthakis instructed any party to splint, rather than buddy tape, Mr. Richardson's finger after that date. To the extent Dr. Marthakis instructed medical staff to splint, rather than buddy tape, Mr. Richardson's finger prior to December 13, 2019, there is no evidence it was plainly inappropriate for her to do so, as she was still in the process of accessing and diagnosing Mr. Richardson's finger injury. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (neither negligence nor medical malpractice constitute deliberate indifference). Thus, no reasonable jury could conclude Dr. Marthakis was deliberately indifferent for splinting, rather than buddy taping, Mr. Richardson's finger.

Next, Mr. Richardson argues Dr. Marthakis was deliberately indifferent for failing to send him for follow-up visits with Dr. Fuller, as Dr. Fuller told him he should return for a follow-up if his condition worsened. ECF 84 at 8, 15-16. But it is undisputed that Dr. Marthakis referred Mr. Richardson for two appointments with Dr. Fuller, and that Dr. Fuller noted at the second visit that no further follow-up was necessary. Mr. Richardson has not shown that additional visits with Dr. Fuller were necessary to treat his condition, and his subjective belief that he should have seen Dr. Fuller more often does not amount to an Eighth Amendment violation. *See Ciarpaglini*, 352 F.3d at 331.

Accordingly, the undisputed evidence shows Dr. Marthakis provided constitutionally adequate medical care for Mr. Richardson's right ring finger, and Mr. Richardson provides no evidence by which a reasonable jury could conclude the treatment he received was plainly inappropriate. Summary judgment is warranted in favor of Dr. Marthakis.

*b. Dr. Mitcheff*

Dr. Mitcheff argues summary judgment is warranted in his favor because his only involvement in Mr. Richardson's medical care was to review and approve Dr. Marthakis' request for outside medical treatment. ECF 81 at 17-18. Here, the undisputed facts show Dr. Mitcheff received a request from Dr. Marthakis to send Mr. Richardson for an MRI and responded by requesting additional information and approving Mr. Richardson for a referral to an orthopedic hand specialist rather than an MRI. Dr. Marthakis attests it was "more than reasonable" for Dr. Mitcheff to approve Mr. Richardson for a referral to an orthopedic hand specialist rather than an MRI given the nature of Mr. Richardson's injury. ECF 81-1 at 13. In his response, Mr. Richardson argues generally that Dr. Mitcheff was deliberately indifferent for "deferring" his request for an MRI, but Mr. Richardson provides no evidence by which a reasonable jury could conclude Dr. Mitcheff's decision to refer him to an orthopedic hand specialist rather than an MRI was plainly inappropriate. Because Dr. Mitcheff acted reasonably by referring Mr. Richardson to an orthopedic hand specialist and there is no evidence he had any other involvement in Mr. Richardson's treatment, summary judgment is warranted in favor of Dr. Mitcheff.

For these reasons, the court:

(1) GRANTS the defendants' summary judgment motion (ECF 80); and

(2) DIRECTS the clerk to enter judgment in favor of the defendants and against Matthew S. Richardson.

SO ORDERED on October 28, 2022

12

 s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge